**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AARON THOMAS, *on behalf of himself,* *FLSA Collective Plaintiffs*, *and the Class,* | Case No.: |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | |
| SECURE GUARD PROTECTION AGENCY LLC, | Jury Trial Demanded |
| Defendant. | |

Plaintiff AARON THOMAS ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant SECURE GUARD PROTECTION AGENCY LLC, ("Defendant"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including unpaid overtime, due to time-shaving, (2) unpaid overtime wages due to a failure to compensate

at a blended overtime rate, (3) statutory penalties, (4) liquidated damages; and (5) attorneys' fees and costs.

3.      Plaintiff further alleges that Defendant breached its obligation to pay New York's prevailing wage laws, Article 9 of NYLL § 230 *et seq.*, under a breach of contract theory, on the grounds that he and Prevailing Wage Subclass Members are third-party beneficiaries to the contracts that Defendant entered into with the relevant public agency, where Defendant expressly or impliedly agreed to pay legally required prevailing wages for all hours worked and supplemental benefits. Plaintiff seeks to recover from Defendant: (1) unpaid wages, including unpaid overtime, (2) unpaid overtime benefits for work days lasting longer than eight (8) hours, and (3) unpaid supplemental benefits.

4.      Defendant operates a security and private investigation company which provides services to both sites throughout New York.  Defendant's sites include those secured pursuant to contracts with public agencies throughout New York State.

5.      Plaintiff, potential collective members, and putative class members are current and former security guards and other similarly positioned employees of Defendant and were victims of Defendant's schemes to underpay employees.  Specifically, despite requiring employees to work hours beyond their shift each day, Defendant would only compensate employees based on their schedules. Defendant's system resulted in both pre-and-post shift timeshaving.

6.      To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of a State's wage laws, Plaintiff further alleges that they and others similarly situated are entitled to recover from Defendant, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully

2

withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.     Personal jurisdiction is proper as Defendant is incorporated in the State of New York.

9.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Defendant's business and putative class members work were predominantly conducted in this district.

## PARTIES

10.     Plaintiff AARON THOMAS is a resident of Kings County, New York.

11.     Defendant and SECURE GUARD PROTECTION AGENCY LLC is a domestic business corporation organized under the laws of the State of New York with a headquarters and principal place of business located at 11821 Queens Blvd, Suite 505, Forest Hills, NY 11375.

12.     At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and state wage laws and the regulations thereunder.

13.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendant.

14.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to security guards, security officers, fire guards, and patrol guards, among others, employed by Defendant in on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

16.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

17.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

18.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including, but not limited to security guards, security officers, fire guards, and patrol guards, among others, employed by Defendant in the six (6) years and 228 days (pursuant to NY's Executive Order tolling during the COVID

pandemic), or the relevant statutory period of each jurisdiction's applicable labor law, before the filing of the Complaint (the "Class Members").

19.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

20.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

21.    The proposed Class includes a Subclass of employees employed by Defendants. The Subclass comprises Class members employed in the States of New York pursuant to a contract with a public agency (the "Prevailing Wage Subclass"), where such contracts require an employer's compliance with Article 9 of NYLL § 230 *et seq.*, which requires (1) a higher minimum wage and/or supplemental benefits and (2) unpaid overtime benefits for work days lasting longer than eight (8) hours. There is no doubt that the Subclass also contains more than forty (40) members.  Plaintiff is a member of the Class and Subclass.

22.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices

of Defendant, as alleged herein, of (i) failing to pay wages, including overtime, due to time shaving, (ii) failing to provide wage and hour notices, at date of hiring and annually; and (iii) failing to provide proper wage statements.

23.     Plaintiff's claims are also typical of those claims which could be alleged by any Prevailing Wage Subclass Member and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.   All the Prevailing Wage Subclass Members were subject to the same corporate practices of Defendant, as alleged herein, of (i) failing to pay all overtime compensation due to pay all minimum wage and/or supplemental benefits required under Article 9 of NYLL, and (ii) failing to compensate hours worked over eight (8) at an overtime premium rate as required under Article 9 of NYLL.

24.     Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

25.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

26.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.    Defendant and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a)  Whether Defendant employed Plaintiff and Class Members within the meaning of the State wage laws;

b) What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and the Class Members;

c) At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and Class Members for their work;

d) Whether Defendant properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

e) Whether Defendant properly compensated Plaintiff and Class Members for their hourly rate and overtime rate;

f) Whether Defendant paid Plaintiff and Class Members for the actual hours that they worked;

g) Whether Defendant provided wage and hour notices to Plaintiff and Class Members, at date of hiring and annually, per requirements of the NYLL;

h) Whether Defendant provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL;

i) Whether Defendant paid Plaintiff and Prevailing Wage Subclass Members at an overtime rate for all hours worked over eight (8) in a day; and

j) Whether Defendant paid Plaintiff and Prevailing Wage Subclass Members all wages and/or Supplemental benefits required by NYLL § 230 *et seq.*

## STATEMENT OF FACTS

*Plaintiff THOMAS's Claims:*

29.     In or around August 2024, Plaintiff THOMAS was hired by Defendant to work as a security guard. During his employment, he was stationed at various hotels throughout New York. Plaintiff THOMAS was originally stationed to work at a homeless shelter run by the New York City agency, the Department of Homeless Services.  Plaintiff was later transferred to work at a different homeless shelter located at 1324 Atlantic Ave., Brooklyn, NY 11216. Plaintiff THOMAS's employment with Defendant continues to the present.

30.     Throughout Plaintiff THOMAS's employment, Plaintiff THOMAS worked a schedule, which frequently fluctuated between part time and full time.  While Plaintiff THOMAS's

schedule would vary, Plaintiff THOMAS was scheduled to work 40 hours or more for the workweeks ending on November 1, 2024 (over 48 hours), November 8, 2024 (48 hours), and November 22, 2024 (40 hours), and Plaintiff was scheduled to work 40 hours or more for further workweeks not listed here. Plaintiff THOMAS would work his scheduled shift and additional hours which went uncompensated, including for the previously listed weeks. At all times, Plaintiff THOMAS, FLSA Collective Plaintiffs and Class Members worked hours in excess of their scheduled hours for which they were not compensated.

31.     From the start of his employment to its end, Plaintiff THOMAS's employment to the present, Plaintiff THOMAS was paid a base wage rate of $22.00 an hour. FLSA Collective Plaintiffs and Class Members were all compensated at similar rates throughout their employment.

*Plaintiff's, FLSA Collective Plaintiffs', and Class Members' Wage Claims:*

32.     Defendant reduced Plaintiff's, FLSA Collective Plaintiffs', and Class Members' compensable hours, when Defendant's employees work beyond their scheduled time. Work conducted outside of Plaintiff, FLSA Collective Plaintiffs', and Class Members' schedules went uncompensated.

33.     Defendant required that employees appear fifteen (15) minutes early for their scheduled shifts but failed to compensate employees for this time pre-shift time. Plaintiff, FLSA Collective Plaintiffs, and Class Members followed Defendant's direction and would appear early for shifts and immediately commence work but would not be compensated for this pre-shift work.

34.     Due to this failure to compensate Plaintiff and other employees for pre-shift work, Plaintiff, FLSA Collective Plaintiffs, and Class Members were undercompensated by fifteen (15) minutes for every shift worked.

35.     Further, Defendant would also demand that employees stay on site to (i) cover their post pending the arrival of incoming guards, (ii) stay at events until the closing of the day, (iii) or

otherwise ask employees to stay past their shift, but Defendant failed to compensate employees for this time as well. Plaintiff twice a week will be asked to stay at least 15 minutes past his shift, but Defendants failed to compensate for this time. Similarly, FLSA Collective Plaintiffs, and Class Members were undercompensated for each shift worked.

36.    Defendant also underpaid Plaintiff and Prevailing Wage Subclass Members due to Defendant's failure to compensate employees pursuant to the prevailing minimum wage as required by Article 9 of the NYLL. Article 9 of the NYLL requires those working pursuant to a public contract to be compensated a minimum hourly payment of $24.55, inclusive of wages and supplemental benefits. This minimum payment has been required since Plaintiff's start of employment. Similarly, Prevailing Wage Class Members received an impermissibly low hourly rate.

37.    Defendant also underpaid Plaintiff and Prevailing Wage Subclass Members due to Defendant's failure to compensate employees overtime benefits for work days lasting longer than eight (8) hours. Similarly, Prevailing Wage Class Members failed to receive overtime for workdays lasting more than eight (8) hours.

*Plaintiff's and Class Members' Wage Theft Prevention Act Claims:*

38.    The State of New York has wage laws providing damages for the failure to provide accurate pay documents. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL— Defendant knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendant.

39.    Defendant further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual

number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

40.    In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that entails a concrete harm to an interest identified by the legislature of New York, As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020)

41.    Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and statements as required by NYLL and other state wage laws.

42.    In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the State legislature of New York. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff and Class Members interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the State legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

43.    Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendant's conduct actually harmed Plaintiff and Class Members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiff and Class Members were entitled to get paid, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendant's failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees. Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

44.    Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members.  This delayed payment caused Plaintiff and Class Members to struggle to timely pay bills and delay or forgo purchases.

45.    Further, the direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

46.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

47.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

48.    Here, it is clear that Defendant's failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendant submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it

constitutes an injury sufficient to provide Plaintiff with Article III standing.

49.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

50.     The case at bar is somewhat different from *Coward* inasmuch as Defendant actually underpaid Plaintiff and Class Members rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.  Plaintiff and Class Members lost benefits by virtue of how Defendant reported their income, and how Defendant reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

51.     Whether or not any Plaintiff and Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

52.     The *Calderon* court stressed that an employee's interest in ensuring that an

employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

53.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendant *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff and Class Members were irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2s to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

54.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL and other state wage laws.

55.     Plaintiff has been denied access to his own paystubs and records since December 2024.  Despite requests to receive this information, Defendants have refused to provide paystubs

to Plaintiff. Class Members are similarly denied access to earning statements Defendants are required to produce.

56.     Defendant knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs, and Class Members, including due Defendant's policy of time shaving.

57.     Defendant knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to time shaving of hours worked in violation of the FLSA and the State wage laws.

58.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

59.     Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

60.     At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.     At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

62.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.00.

63.     At all relevant times, Defendant had a policy and practice of failing to pay wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs for all overtime hours worked due to time shaving in violation of the FLSA.

64.     Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

65.     Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all overtime hours, when Defendant knew or should have known such was due to Defendant's policy of time shaving.

66.     Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

67.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

68.     Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; plus an equal amount as liquidated damages.

69.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

70.     Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

71.     At all relevant times, Plaintiff and Class Members were employed by Defendant within the meaning of the NYLL §§ 2, 651.

72.     At all relevant times, Defendant had a policy and practice of failing to pay Plaintiff and Class Members all wages, including overtime, due to timeshaving, in violation of the NYLL, including §198 and §663.

73.     Defendant willfully violated the rights of Plaintiff's and Class Members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek due to time shaving in violation of NYLL, including § 198 and § 663.

74.     Defendant knowingly and willfully failed to provide accurate wage and hour notices, at the date of hiring and annually thereafter, to Plaintiff and Class Members, as required by NYLL § 195(1).

75.     Defendant knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required by NYLL § 195(3). Defendant provided fraudulent wage statements that failed to accurately reflect the proper compensation owed and hours worked by Plaintiffs and Class Members.

76.     Defendant knowingly and willfully failed to provide full compensation, including

19

supplemental benefits, to Plaintiff and the Prevailing Wage Subclass in accordance with Article 9 of NYLL.

77.     Due to the Defendant's NYLL violations, Plaintiff and Class Members are entitled to recover from Defendant their unpaid wages, including overtime, due to time shaving; damages for unreasonably delayed payments; statutory penalties; reasonable attorneys' fees; and costs and disbursements of the action.

## COUNT III
## BREACH OF THE PUBLIC WORKS CONTRACTS

78.     Plaintiff repeats and re-alleges every previous allegation in this complaint as if fully set forth herein.

79.     The contracts for a public agency entered into by Defendant expressly or impliedly contained terms that required payment of prevailing wages for all hours worked and supplemental benefits to Plaintiff and Prevailing Wage Subclass Members.

80.     Those prevailing rates or wages and supplemental benefits were made a part of these contracts for the benefit of Plaintiff and Prevailing Wage Subclass Members.

81.     Defendant breached these contracts by willfully failing to pay and/or willfully failing to ensure payment of contractually and statutorily mandated prevailing wages and supplemental benefits to Plaintiff and Prevailing Wage Subclass Members for labor performed on behalf of the public agency.

82.     By virtue of having breached the contracts, Defendant is liable to Plaintiff and Prevailing Wage Subclass Members as third-party beneficiaries of those contracts.

83.     In the alternative, by virtue of having breached the contracts, Defendant has unjustly enriched themselves at Plaintiff's and Prevailing Wage Subclass Members' expense as they are third-party beneficiaries of those contracts and Defendant must disgorge its unjust retained

monies.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the state wage laws;

b.  An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.  An award of unpaid wages, including overtime, due under the FLSA and state wage laws;

d.  An award of damages and/or disgorgement due to Defendant's breach of contract and/or unjust enrichment;

e.  An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and the state wage laws;

f.  An award of statutory penalties as a result of Defendant's failure to comply with wage notice and wage statement requirements;

g.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.  An award of all owed benefits owed pursuant to state wage laws;

i.  Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiff as Representatives of the Class; and

l.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

## NY BCL §630 NOTICE AND DEMAND

Plaintiff hereby gives this notice, in writing, to each shareholder of Defendant, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiff.

Plaintiff also demands an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the Defendant upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: May 5, 2025

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*